UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FERNANDO ESPINOSA RAMIREZ,

Petitioner,

v.

BRUCE SCOTT, et al.,

Respondents.

CASE NO. 2:26-cv-04187-BAT

**ORDER DENYING HABEAS PETITION AND DISSOLVING TRO**

Petitioner Fernando Espinosa Ramirez seeks 28 U.S.C. § 2241 habeas relief, alleging that Respondents violated 8 C.F.R. § 241.13(i)(3) and procedural due process by revoking his Order of Supervision (OSUP) and detaining him for immediate deportation to Mexico based on a final order of removal. Dkt. 1. The Court finds that Respondents violated neither the applicable regulations nor the Due Process Clause by revoking Petitioner's OSUP, detaining him on the basis of imminent removal, providing notice of the reasons for his detention, and conducting an informal interview in which he provided a written response. The Court therefore **DENIES** petitioner's habeas petition (Dkt. 1) and **DISSOLVES** the temporary restraining order (TRO) (Dkt. 11).

## BACKGROUND

The Court earlier issued a TRO to prevent the transport of Petitioner out of the district or

the country during the pendency of his habeas petition. Dkt. 11. The TRO was based on Petitioner's assertions that have been demonstrated to be incorrect or incomplete. *See* Dkts. 12, 13.

Since 1998, Petitioner, a citizen of Mexico, has on numerous occasions been arrested and removed from the United States. *See* Dkt. 12, at 3–4; Dkt. 13-1, at 3–4. His current detention marks the sixth time the government has reinstated his 2001 expedited removal order; he has been permitted to voluntarily depart another four times. *See* Dkt. 13-1, at 4. In late 2020, Petitioner appealed an immigration judge's denial of withholding only relief to the Bureau of Immigraton Appeals (BIA) and was subsequently released from Northwest ICE Processing Center (NWIPC) on an OSUP. *Id.* In January 2024, the BIA dismissed Petitioner's appeal of his denial of withholding. *Id.* In April 2025, the Ninth Circuit dismissed Petitioner's petition for review. *Id.*; Dkt. 13-4, at 2–4.

On October 27, 2026, Petitioner was detained by Immigration and Customs Enforcement (ICE) in Richland, Washington during a scheduled check-in, pursuant to an arrest warrant ICE served on him, and was subsequently transferred to NWIPC, where he remains.[1] Dkt. 13-5, at 2. Also on October 27, 2026, Petitioner's OSUP was revoked to enforce the removal order against him that had been exhausted administratively and judicially, and he was provided with notice of an informal interview at which he would be given an opportunity to respond to the reasons for the revocation and offered the opportunity to submit evidence or information to be considered in support of his release. Dkt. 13-8, at 2. Petitioner provided a written statement in Spanish, stating that he was in the country to care and support his wife with a medical condition, he had two

[1] Although served upon Petitioner on October 27, 2026, the warrant appears to have been prepared earlier. The warrant is dated October 21, 2026, while the service date shows that "21" was stricken and replaced with "27." Dkt. 13-5, at 2.

daughters in college and another about to enter college, and he had a company where he could employ many. *Id.* at 3. A warrant for Petitioner's removal was issued on October 28, 2026, and he was informed on October 30, 2026, that he would be removed from the country in November 2026. Dkts. 8, 13-6. Petitioner filed the current habeas petition on October 29, 2026. Dkt. 1.

## DISCUSSION

Petitioner contends that the government violated 8 C.F.R. § 241.13(i) and the Due Process Clause. The record contradicts these contentions.

### 1. Compliance with 8 C.F.R. §§ 241.4 and 241.13

Noncitizens subject to a removal order, such as Petitioner, may be released from detention under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. These regulations describe the procedure by which release can be revoked if the noncitizen violates a condition of release, if there is a significant likelihood of removal "in the reasonably foreseeable future," or if revocation is in the public interest. 8 C.F.R. §§ 241.4(l), 241.13(i).

"Upon revocation" of an OSUP, a noncitizen "will be notified of the reasons for revocation of his or her release" and will be afforded an initial informal interview "promptly after his or her return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i). During that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she will be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i). These provisions are "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025).

"It is well-established that government agencies are required to follow their own regulations. . . . Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" *Id.* at 1164 (quoting *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025)))

There is no indication that the government failed to provide Petitioner with the procedural protections set forth in § 241.4 and § 241.13. In invoking 8 C.F.R. § 241.4(l) to revoke Petitioner's OSUP, the government provided notice that it was enforcing the removal order against him and had the ability and means to effectuate his removal. Dkt. 13-8, at 2. Petitioner was provided an informal interview in which he stated why he should not be removed from the country. *Id.* at 3. A day later the warrant of removal was issued, Dkt. 13-6; two days after that, Petitioner was informed of his imminent removal from the country, Dkt. 8.

Petitioner has not demonstrated that his release is warranted by Respondents' failure to follow the regulatory requirements in revoking his OSUP and detaining him.

**2. *Mathews* Due Process**

For Petitioner's *Mathews* due process claim, the Court assesses three factors: (1) private interest affected by the official action; (2) risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) Respondents' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context").

The first *Mathews* factor weighs in Petitioner's favor. Courts have previously held, individuals on release, even when such release is conditional, have a liberty interest in their continued freedom from custody. *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). That Petitioner is subject to a reinstated order of removal does not undermine this protected liberty interest. *See Torres Ferrera*, 2026 WL 776145, at *4–*5 (W.D. Wash. Mar. 19, 2026) (collecting cases and finding that petitioner subject to reinstatement "had a protected interest in her liberty, the deprivation of which was subject to constitutional limits"). Here it is undisputed petitioner had been released under an OSUP since 2020. Dkt. 13-1, at 4. That the government allowed Petitioner to remain in the community for nearly six years after releasing him on supervision only strengthened that interest. *See Diego Francisco v. Noem*, No. C26-25, 2026 WL 295211, at *4 (W.D. Wash. Feb. 4, 2026). On the other hand, the record shows that there were no impediments to the significant likelihood that his removal would occur in the reasonably foreseeable future. Petitioner has been removed five times before and has voluntarily departed six times. Dkt. 13-1, at 4. Courts have suggested that a noncitizen's liberty interest in freedom can be "significantly reduced" by factors that show removal to be significantly likely to occur in the reasonably foreseeable future, such as the issuance of a travel document. *See, e.g.*, *Lee v. Scott*, 2026 WL 2186139, at *5 (W.D. Wash. Jul. 29, 2026); *Saechao v. Scott*, 2026 WL 626765, at *4 (W.D. Wash. Mar. 5, 2026) .

The second *Mathews* factor does not weigh in Petitioner's favor. Upon being detained to enforce the reinstated removal order, Petitioner was provided notice and an informal interview to set forth reasons and evidence against his removal in accordance with 8 C.F.R. §§ 241.4 and 241.13. Petitioner argues that the regulatory procedures were insufficient to satisfy the Due

Process Clause because the existence of Petitioner's "statement does not, by itself, establish that ICE meaningfully evaluated his circumstances or determined whether continued physical detention was necessary." Dkt. 14, at 4. This is a point well-taken but not applicable to the circumstances. Neither in his interview statement nor in habeas briefing has Petitioner explained why Petitioner's reinstated 2011 removal order should not be enforced as it has in the past, particularly given there are no further ways to exhaust his claims for relief administratively or judicially. Petitioner also provides no reason to question the validity of the government's ability to remove him immediately. The government provided notice of imminent removal on October 30, 2026, and would have proceeded with removal had the Court not issued a TRO. Dkts. 8, 11. In the cases cited by Petitioner, Dkt. 14, at 2–3, there was no indication that the government had followed their own regulations, let alone afforded the petitioner due process. *See Torres Ferrera v. Scott*, 2026 WL 776145 (W.D. Wash. Mar. 19, 2026); *Hernandez-Munoz v. Scott*, 2026 WL 1102161 (W.D. Wash. Apr. 23, 2026); *Brambila Sanchez v. Scott*, 2026 WL 3181169 (W.D. Wash. Oct. 23, 2026). Here, in contrast, the record shows that the government followed the relevant regulations, and that Petitioner has a final removal order and strong evidence of imminent removal. *See, e.g.*, *Saechao*, 2026 WL 626765, at *4; *Truong v. Scott*, 2026 WL 2874081, at *4–*5 (W.D. Wash. Sept. 4, 2026). It is unlikely that detaining Petitioner to facilitate his removal is erroneous, even without a pre-detention hearing; and if the government fails to remove Petitioner and his detention is erroneous, he may seek relief from prolonged detention under *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

The third *Mathews* factor also does not weigh in Petitioner's favor. The government's interest in enforcing immigration laws and returning petitioner to Mexico is significantly greater when there is a final order of removal and a currently valid travel document. *Thiravong v. Scott*,

2026 WL 1382356, at *3 (W.D. Wash. May 18, 2026); *see also Manivong v. Mullin*, 2026 WL 1162413, at *4 (W.D. Wash. Apr. 4, 2026). Both exist here.

Petitioner has not demonstrated that his release is warranted by Respondents' violation of his due process rights.

## CONCLUSION

The Court **DENIES** petitioner's habeas petition (Dkt. 1) and **DISSOLVES** the TRO (Dkt. 11).

DATED this 18th day of November, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge